NICHOLAS McALPINE v. HELEN C. REICHENEKER, *as Administratrix of the Estate of Nelson A. Reicheneker, deceased.*

No. 7743.

1. VENDOR AND VENDEE—*Conditions of Sale—Waiver—Rescission of Contract.* Where the vendor of land agrees to furnish the vendee an abstract of title within 30 days from the date of sale, which is not done, and the vendee thereafter treats the default as immaterial, and continues to make payments under the contract, and otherwise treats it as still in force, he will be deemed to have waived the performance of that condition, and cannot obtain a rescission or a recovery of the money advanced by reason of such default.

2. TITLE, *Proceeding to Obtain—Presumption.* Where the title to the land sold can only be obtained through proceedings in the probate court, of which fact both parties had knowledge, both will be deemed to have contemplated that such proceedings were to be had, and that the sale was to be made substantially in the manner prescribed by law.

3. TERMINATION OF CONTRACT—*Forfeiture of Payments.* The evidence examined, and it is *held*, that the contract for the sale of the land was terminated by the default of the vendee, and that he was not in a position to insist upon a recovery of the money advanced by him and which was to be forfeited in case of his failure to perform.

*Error from Wyandotte District Court.*

ACTION by Nicholas McAlpine against Helen C. Reicheneker, personally and as administratrix of the estate of Nelson A. Reicheneker, deceased, to recover $4,000, which he paid to her upon a real-estate transaction during the year 1887. The contract under which the money was paid is as follows:

"Received of Nicholas McAlpine $1,500 in part payment of the purchase-money for lands belonging to the estate of Nelson A. Reicheneker, located in the southeast quarter of section 34, town 10, range 25, and the northeast fractional quarter of section 3, in town 11, range 25, Wyandotte county, Kansas, extending from the right of way of the Missouri Pacific railway on the east to the outer edge of the high willow bar, or high ground grown up with willows, containing 50 acres, more or less, subject to measurement, exclusive of the right of way of the Kansas City, Wyandotte & Northwestern railroad, this day sold to him for $2,000 per acre, payable as follows: $1,500 additional to the amount receipted for to be paid within four months from this date, and deferred payments as follows: One-third of the amount of the purchase-money to be paid on or before six months after date, and the balance in one and two years from date, in equal payments; said deferred payments to be secured by mortgage or deed of trust of the property, and to draw interest at

the rate of 7 per cent. per annum, payable semiannually. Complete abstract of title to be furnished by grantor within 30 days from this date, and to be followed by warranty deed conveying the title of said grantor as shown by said abstract. Should the title be pronounced defective by the purchaser's attorney this contract shall be void, and the $1,500 hereby paid shall be returned to said Nicholas McAlpine. All taxes for 1887 and subsequent years to be paid by purchaser. It is distinctly understood that if said Nicholas McAlpine does not make cash payment of $1,500 within four months, and the one-third payment as above stipulated, this contract is to be absolutely void, and no longer binding between the parties hereto, and the $1,500 payment hereon and the additional $1,500 to be paid as above is to be forfeited to grantor.—HELEN C. REICHENEKER, administratrix of the estate of Nelson A. Reicheneker, deceased.''

On August 4, 1887, another payment of $1,500 was made under the contract, and the following receipt indorsed thereon :

''$1,500.        KANSAS CITY, KAN., August 4, 1887.
''Received on the within contract $1,500, as per agreement.        HELEN C. REICHENEKER.''

Afterward, McAlpine, not being prepared to close up the transaction as the contract required, obtained an extension upon the same, and the following writing was given and signed by the defendant :

''For $1,000, the receipt of which is hereby acknowledged, I agree to extend the date of the expiration of the within contract to December 31, 1887, it being understood and agreed that I shall have the privilege of selling at any time at the same price before that date ; it being also agreed that said McAlpine shall have the refusal at any price I may be able to sell said lands, and said $1,000, with the $3,000 already paid, to be a part of the purchase-money, the amount thus paid to be refunded to the said McAlpine out of the purchase-money of said lands if sold to any other

parties, said McAlpine agreeing hereby to purchase 58 acres, if it surveys that number of acres.

HELEN C. REICHENEKER."

Each of the writings was duly acknowledged and recorded.

It is alleged in the petition that the money so paid, which aggregated $4,000, was advanced upon the representations of the defendant that she had a good title, and had authority to carry out the agreement and convey a complete title to the land, but that in fact she had no such authority; and further, that she never tendered an abstract of title to the land, nor made any showing of her authority to make the agreement or to sell the land. He further asks that the contract be declared canceled, and that he recover the amount of money which he had advanced thereon.

The defendant answered that McAlpine intentionally permitted the contract to expire by its own terms, and forfeited to her the $4,000 as the contract provided; that she had been charged with the money so received in her representative capacity by the probate court; that she obtained authority to sell the land from the probate court, one order being obtained on November 21, 1885, and the other on May 21, 1887; that plaintiff never demanded any performance of the contract on her part, never offered the purchase-money specified in the contract, but that he allowed it to terminate because he was unwilling and unable to comply with its terms; that up to December 31, 1887, and even later, she was ever willing, able and anxious to sell the lands upon the terms prescribed, or on terms even less favorable to her and the estate, but the plaintiff declined to purchase; that he entered into the contract with full knowledge of all the facts pertaining to the title and to the several interests of the heirs, as well as her authority in the premises.

At the close of the testimony the court instructed the jury to find for the defendant, and at the request of the plaintiff certain special questions were submitted, which the jury answered to the effect that Mrs. Reicheneker never presented an abstract of title to the plaintiff, nor exhibited authority from the probate court to make the sale; that when the negotiation was made she had no authority from the probate court to sell the land, and that a part of the interest therein belonged to her minor children. The jury found for the defendant as directed. A motion for a new trial was made and overruled, and of these rulings the plaintiff complains.

*James M. Mason,* for plaintiff in error.

*Nathan Cree,* for defendant in error.

*Daniel B. Hadley,* for heirs of N. A. Reicheneker.

The opinion of the court was delivered by

JOHNSTON, J.: The record discloses that McAlpine obtained only an option for the purchase of the Reicheneker land, of which Helen C. Reicheneker, the widow of Nelson A. Reicheneker, deceased, owned a $\frac{10}{18}$ interest, while the remaining interests were owned by the minor children. When the agreement was made, in April, 1887, no authority to sell the land had been procured from the probate court by Mrs. Reicheneker, but the following month an order was made by the probate court conferring upon her the right to sell the land. It was found by the court that the personal property belonging to the estate was insufficient for the payment of the debts thereof; that a division of the property could not be made without injury to that remaining, and that it would be most beneficial to the estate that the whole tract should be sold. It was

therefore ordered that it should be all sold at private sale, one-third of the price to be paid in cash, one-third to be paid in one year thereafter, and the remaining one-third in two years from the date of sale, the deferred payments to bear interest at the rate of 8 per cent. per annum; and it was ordered that the purchaser should give a mortgage upon the land to secure the deferred payments. Provision was made that it should be appraised as the law requires, and that it should not be sold for less than three-fourths of its appraised value. Under the contract with McAlpine, she agreed to give him the exclusive right to purchase the tract of land, estimated to contain 50 acres, for a limited time, at $2,000 per acre. One-third of the price was to be paid on or before six months, and the remaining two-thirds in two equal annual payments, drawing interest at the rate of 7 per cent. per annum, to be secured by a mortgage upon the property. For the option he made a cash payment of $1,500, was to pay $1,500 more within four months, and if the first one-third of the purchase-money was paid within the specified time, the $3,000 advanced for the option was to be credited to the plaintiff as a part of the purchase-money, but it was to be forfeited to the defendant unless the first one-third payment was made. The arrival of the time when the first payment was to be made found him unprepared to meet it, and the defendant then, for a consideration of $1,000, gave him additional time within which to meet the payment. From his own testimony it appears that he was unwilling and unprepared to perform his obligation within the extended time. He was negotiating the purchase of a large tract of other and adjoining land, and he did not desire to take the Reicheneker land unless he could also obtain the

adjoining land.  Although he utterly failed to perform his part of the agreement, he seeks to recover the money which it was stipulated should be forfeited in the event of such a failure.  It is now insisted that as Mrs. Reicheneker failed to tender an abstract of title within the specified time, did not produce to plaintiff's attorney the authority to convey the land, and did not procure the measurement of the same, she was first in default, and therefore the plaintiff was entitled to have the money advanced refunded.  While the agreement required her to furnish an abstract of title within 30 days, it is clear that this condition of the contract was waived by the plaintiff.  He made two payments to her, and procured an extension of time to make other payments several months after the time when the abstract was to be furnished.  He says that he was well acquainted with the title to the land, and his conduct shows that he deemed the provision relative to an abstract to be immaterial, and both of the parties treated the contract as still in force until after the lapse of the extended time.

1. Vendor and vendee—conditions of sale —waiver—rescission of contract. The performance with reference to abstract was effectually waived by the plaintiff. This was the only condition precedent incumbent upon the defendant to perform.

It is true plaintiff insists that the failure of the defendant to tender a deed placed her in default, and required her to refund the money advanced; but no deed was required until the first one-third payment was made by the plaintiff.  The case is argued by him as if the defendant had instituted an action to compel the payment of the first installment, and that it devolved on her to put him in default.  He is the moving party, and cannot put her in default except by a performance or offer to perform on his part.

(*Morrison v. Terrell*, 27 Kan. 326 ; *Soper v. Gabe*, 55 id. 646 ; 41 Pac. Rep. 969.)

He further contends, however, that she was unable to convey a title, there being no order of the probate court at the time the agreement was made authorizing the sale, and because the order subsequently made did not conform to the contract made between the parties. He argues that for want of power the contract was invalid, and the money paid should therefore be refunded. The contract cannot be treated as wholly void. The defendant owned a $\frac{10}{18}$ interest in the land in her own right, and she obtained from the probate court authority to make a sale and to convey the entire title to the land. She did not obtain direct authority from the court to sell the land to the defendant at a stipulated price, regardless of statutory requirements, but of this the plaintiff has no cause to complain. He knew the condition of the title, and knew that a sale could only be made with the permission and authority of the probate court, and therefore he is held to know that it could only have been made in the manner prescribed by the statute. Both of the parties appear to have been somewhat mistaken as to the legal procedure, but manifestly both contemplated that a title was to be obtained through legal proceedings in the probate court. The order made by the probate court prescribes conditions substantially in accord with those of the contract, and evidently was obtained with a view of carrying out, so far as the statutes permitted, the agreements of the parties. They knew or must be held to have known that an appraisement was required, and that the land could not be sold for less than three-fourths of its appraised

2. Title, proceeding to obtain— presumption.

value, and also that other steps prescribed by the statute could not be dispensed with.

The interest rate named in the order differed slightly from that specified in the contract, but that might have been modified, and if not, the defendant could have made provision for that out of her own interest. There was no misrepresentation by her respecting the state of the title nor in regard to her right to convey. There is nothing to show that she could not have been placed in a position to convey the land to the plaintiff on December 31, 1887, or even at an earlier date. An appraisement of the land might have been procured under which such a sale could have been made as the statute allows, and such as both of the parties contemplated. She was always ready and even anxious to sell and convey the land to plaintiff up to the termination of the contract, and for months afterward. No objection to the sale was made by the heirs or by anyone interested in the transfer, and an order for the sale and conveyance was granted by the court. The sale was not defeated on account of any obstacle thrown in the way by the owners of the land or by the probate court. It failed because the defendant was unwilling and unprepared to perform on his part, and this is fairly disclosed by his own testimony. He never complained that an abstract of title had not been tendered, nor of any failure on her part, until long after he had made default and the contract had been terminated. Payment of the first one-third of the purchase-price, which amounted to about $30,000, was never tendered by him, and it is evident that he was never in a condition to make a tender. Instead of requesting performance on her part, he was seeking for delay, and he even went so far as to pay an addi-

A. T. & S. F. Rld. Co. v. Lannigan.

tional $1,000 to obtain a further delay or extension of a little more than two months. He was clearly in default on the last day of December, 1887,

**3. Termination of contract—forfeiture of payments.** and the money which he had advanced had been forfeited by reason of his own delay and fault. For a period of more than two years he seems to have treated the money as forfeited, because no steps were taken by him looking to a recovery of the same until the latter part of April, 1890. In this action he has failed to show any right of recovery, and the court committed no error in directing a verdict in favor of the defendant.

Judgment affirmed.

All the Justices concurring.