JOHN F. TIERNEY, APPELLEE, V. KARL F. DIETSCH ET AL., APPELLANTS: UNION CENTRAL LIFE INSURANCE COMPANY ET AL., APPELLEES.

FILED JUNE 27, 1923. No. 23137.

1. **Vendor and Purchaser.** Before acquiring title, vendee in an enforceable contract to purchase land may enter into a valid agreement to sell it.

2. ———: FRAUD. Where a vendee, before acquiring title to land which he has legally agreed to purchase, enters into a contract to resell it, his failure to disclose the terms of his own purchase to the purchaser upon resale is not necessarily of itself a fraud upon the latter.

3. ———: ABSTRACT: WAIVER. A vendee in a contract to purchase land may waive the furnishing of abstracts at the stipulated time.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Sullivan, Squires & Johnson,* for appellants.

*Kelly & Schnell* and *Sullivan, Wright & Thummel, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

Rose, J.

This is a suit to forclose a mortgage on a farm in Custer county. The mortgagee, John F. Tierney, is plaintiff. The mortgagors, Karl F. Dietsch and Altha A. Dietsch, his wife, were owners of the mortgaged farm and are defendants. Other defendants have liens on the same farm. The mortgage was dated March 1, 1920, and was given to secure the payment of three promissory notes aggregating $26,000, one for $6,000 and each of the others for $10,000, all due March 1, 1921. Mortgagors being in default April 28, 1921, this suit was then begun. The answer to the petition contained pleas that the execution of the notes secured by mortgage on the farm in Custer county grew out of a contract by mortgagors to purchase from plaintiff a 6,460-acre ranch in Cherry county and personal property thereon, including 910 head of live stock, farming implements and household furniture; that the contract of purchase was procured by the fraud of plaintiff; that his title failed; that there was no consideration for the notes and mortgage; that plaintiff violated the terms of this contract of sale; that mortgagors paid plaintiff $10,000 on the purchase price; that after a short occupancy of the ranch in Cherry county they rescinded the sale for fraud and surrendered possession. The answer contained a prayer for the cancelation of the mortgage on the farm in Custer county and for the return of the money applied on the rescinded purchase of the ranch in Cherry county, less the rental value of the latter during the time mortgagors were in possession. The facts pleaded as defenses were denied in a reply to the answer. The district court, upon a trial of the issues, found the amount due plaintiff from mortgagors to be $30,689.35, including interest, and ordered a foreclosure of the mortgage. Mortgagors have appealed.

It is argued that the notes and the mortgage securing them should have been canceled on account of fraud perpetrated by plaintiff in inducing mortgagors to purchase

the ranch in Cherry county. This question requires a more detailed statement of the facts.

Robert S. Lee owned the ranch in Cherry county. By contract in writing April 22, 1919, he agreed to sell and J. S. McGraw to purchase it for $113,050, payable as follows: Cash, $1,000; June 1, 1919, $5,000; August 1, 1919, $9,000; each year thereafter for nine years on November 1, $10,000; November 1, 1929, $8,050. McGraw was entitled to a warranty deed and to possession as soon as he paid $50,000, the remainder of the purchase price to be secured by a mortgage on the ranch purchased by him. His purchase, as evidenced by the same instrument, included personalty consisting of 910 head of cattle and horses, ranch implements and household goods. His agreement also obligated him to pay $5,000 June 1, 1919, on the purchase price of the live stock and the remainder August 1, 1919.

Under a written agreement to perform McGraw's obligations to Lee, plaintiff, June 18, 1919, took an assignment of the contract of purchase.

Plaintiff entered into another contract June 26, 1919, to sell and "convey, or cause to be conveyed, by warranty deed" to mortgagors the ranch and personal property which McGraw had agreed to purchase from Lee The writing was signed by plaintiff and mortgagors, the latter agreeing to pay for the ranch $129,200, as follows: Cash, $10,000; note for $10,000 dated July 1, 1919, due March 1, 1920; two notes, each for $7,500, dated July 1, 1919, due March 1, 1920; nine annual payments of $10,000 each, due November 1, from 1920 until 1928; November 1, 1929, $4,200. The purchase by mortgagors included also the live stock and other personalty on the terms exacted by Lee in his sale to McGraw. By means of this contract and payments made by mortgagors, the latter obtained possession of the ranch and the live stock thereon and controlled both the real estate and the personal property as their own, operating the ranch and disposing of cattle, but finally surrendering possession to

Lee upon their failure to make the stipulated payments. They made their purchase when prices were high. Payments fell due after a contraction of the currency, a fall in prices and a period of liquidation had interfered with the procuring of funds to meet maturing obligations. They were unable to pay, at the date of maturity, March 1, 1920, the three notes aggregating $25,000, and, to procure a year's extension of time, executed three renewal notes for $26,000, including unpaid interest, and secured them by mortgage on their farm in Custer county. This is the mortgage foreclosed in the district court on petition of plaintiff. It is from the decree of foreclosure that mortgagors have appealed.

The position of mortgagors in praying for a cancelation of the notes and mortgage may be summarized as follows: Plaintiff did not have title to the ranch which he agreed to sell. He fraudulently concealed the terms of the contracts under which he procured his equitable interest. Mortgagors entered into the contract of purchase in ignorance of the facts. The title of plaintiff failed. There was no consideration for the purchase. Plaintiff failed to perform an agreement on his part to furnish abstracts of title within a reasonable time. The purchase was properly rescinded for fraud. Is the position thus taken tenable?

Plaintiff did not pretend to have title. He made no false representation in that respect. He had a valid agreement to acquire title. He and his assignor negotiated for the ranch to profit by a resale. Lee owned the ranch and had the right to sell it on the terms specified in his contract with McGraw. There was nothing to prevent the latter from making a valid assignment to plaintiff. The transactions, contracts and evidence as a whole do not show unreasonable prices. There is no complaint that the profits on resale were unconscionable. Mortgagors knew that plaintiff did not have title, that a deed from Lee was essential to a valid transfer to them, and that McGraw and plaintiff were speculating in the

ranch property. Plaintiff bargained to convey, "or cause to be conveyed," to mortgagors the title to the ranch. The means of doing so were created by the contract with Lee, the assignment to plaintiff and the purchase by mortgagors upon making their stipulated payments at maturity. Before acquiring title, a vendee in an enforceable contract to purchase land may enter into a valid agreement to sell it. *McNeny v. Campbell,* 81 Neb. 754. The evidence does not prove failure of title as a defense to the foreclosure of the mortgage.

Did plaintiff fraudulently conceal from mortgagors the terms on which McGraw agreed to purchase the ranch from Lee? The evidence does not tend to prove any agency, trust or other confidential relation requiring plaintiff to disclose in advance the terms upon which Lee had agreed to transfer his title. If those terms were material factors in the negotiations, mortgagors could have made disclosure a condition of their purchase. They were experienced farmers and dealers in live stock. They inspected the ranch and the cattle, understood the prices and other terms exacted by plaintiff, entered into their contract without any fraudulent inducement as to values or payments, took possession of the ranch, lived on it a year or more, recognized Lee as the holder of the title, renewed purchase money notes, sold cattle, and offered the ranch for resale at an advance in price. The better view of the evidence is that mortgagors relied on their own knowledge, skill and foresight, after inspection, and on plaintiff's ability to perform his agreement to convey, "or cause to be conveyed," the title of Lee. It may fairly be inferred from the evidence that their disappointment in completing their purchase resulted from their failure to make their payments at maturity. The record has been searched in vain to find any proof sufficient to support a finding that plaintiff fraudulently concealed the terms of Lee's contract of sale. On the contrary, there is proof that they were acquainted with

the facts. Mortgagors, therefore, are not entitled to relief on this ground.

Did the failure of plaintiff to furnish abstracts of title within a reasonable time justify a recission? On this issue the finding must be in favor of plaintiff. No definite time was fixed for the furnishing of abstracts. The agreement to do so was to be performed within a reasonable time. The evidence shows that Lee had title, was willing and able to furnish abstracts thereof, to execute a warranty deed in compliance with his contract of sale and to deal directly with mortgagors who had plaintiff's consent to pursue that course. They did not demand abstracts until they had been in control of the ranch and the cattle as owners for a considerable time. The abstracts were eventually furnished. Mortgagors were not injured by delay. Their failure to make deferred payments was not traceable to that source. The circumstances show a waiver of the right to require abstracts according to the letter of the contract. *McAlpine v. Reicheneker*, 56 Kan. 100; *Farmers Investment Co. v. O'Brien*, 109 Neb. 19. The plea for a rescission and for a recovery of the purchase money paid is not supported by the evidence. The deplorable losses sustained by mortgagors were attributable to the exercise of the right of contract and not to fraud.

The findings of the district court on all the issues seem to reflect the proper view of the evidence.

AFFIRMED.