### No. 30,253.

JOHN W. STONE, as Administrator of the Estate of Grace L. Stone, Deceased; CLARENCE MARKER, WILLIAM MARKER, MARY MARKER and JULIA MARKER, by JOHN W. STONE, Their Guardian, and ETHEL MARKER BAZIL, *Appellants*, v. P. J. SMITH, *Appellee*.

(7 P. 2d 100.)

Opinion filed January 30, 1932.

*Ray S. Pierson*, of Burlington, and *W. L. Huggins*, of Emporia, for the appellants.

*L. H. Hannen*, of Burlington, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover damages for breach of contract to purchase a farm.

The facts developed by the pleadings and evidence without serious dispute were to this effect:

The late Reese Marker, of Coffey county, died seized of an eighty-acre farm near Burlington. He left no will and was survived by his widow and a number of children. In some way the widow acquired the interest of some of her children, which, being added to her own statutory half, made her the owner of nine-fourteenths of the farm, the remaining five-fourteenths being vested in her five minor children. Eventually the widow married John W. Stone, and on October 26, 1929, she and her second husband, as Grace L. Stone and John W. Stone, parties of the first part, entered into a written contract with the defendant in this action, P. J. Smith, party of the second part, in which they sold the Reese Marker farm, representing "that they were the owners of said real estate" and agreeing within a reasonable time to furnish abstract "showing a marketable title vested in them." The contract also provided for the execution of a warranty deed within ten days, and that it should be placed in escrow to be delivered to the grantee upon the payment of a stipulated amount. The deed was executed by Stone and wife forthwith and placed in escrow as stipulated. It contained the usual recitals of present grant, together with a warranty that the grantors, Grace L. Stone and John W. Stone, her husband, on the date of its execution, October 26, 1929, were—

"Lawfully seized in their own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above-granted and described premises, with the appurtenances; . . ."

When the contract was executed defendant gave Mrs. Stone his check for the first payment, $600, but within a day or two he stopped payment upon it on the professed ground that he was dubious about the power or right of Stone and wife to make good their part of the contract. He testified:

"A. I got to studying this contract, the way it was written and the minor children . . . I studied it all the time going on the train.

. . . . . . . . . . . . .

"A. Next day I went to Goodman, Mo., . . . called up Mr. Limbocker [banker] and told him to hold that check up until I got here. . . .; then I called Doctor Hitchens [real-estate dealer and escrow holder] over the telephone. . . . I told Hitchens that I could not go ahead with this contract because too many minor heirs, and they claimed they [Stone and wife] were sole owners and according to the contract they were not; minor heirs there.

. . . . . . . . . . . . .

"Q. Now when you came back from Missouri and before you saw Mr.

Hitchens, I will ask you to state whether or not you investigated the legality of this contract and consulted counsel with reference to the matter? A. I did.

"Q. Did you act upon his advice with reference to this transaction? A. I did.

"Cross-examination:

"Q. Now you knew that you would have to get a title by some probate court process, didn't you, with regard to those minor heirs? A. I wanted a warranty deed.

"Q. I am asking you—you knew there would have to be some kind of a proceeding in the probate court in order to get the minors' interest, didn't you? A. Yes.

"Q. You knew that at the time? A. That was talked about.

"Q. You knew that, as a gentleman of intelligence, when a man dies with no will that if his real estate is needed to support and educate his children that the probate court has jurisdiction over it?

"A. Yes, sir."

On the assumption that the contract was valid and enforceable, notwithstanding Grace L. Stone and her husband only held title and ownership of nine-fourteenths interest in the land and that her minor children held title and ownership to the remaining five-fourteenths, Grace L. Stone on her own behalf and as the mother and next friend of her minor children brought this action for damages for breach of contract.

The issue of law was developed by the pleadings. The cause was tried before a jury and considerable evidence was adduced by the parties. Defendant's motion for an instructed verdict was overruled and the jury returned a verdict in favor of plaintiffs for $990.

After the verdict was returned, among various motions filed by the litigants was one by plaintiffs to amend their petition by interlineation of the following recitals concerning the contract of sale:

"That said contract, exhibit A, contains the following provision:

" 'The parties of the first part further agree to furnish an abstract up to date showing a marketable title vested in them, within a reasonable time, and the party of the second part shall have a reasonable time to examine the same.'

"But that it was understood and agreed by and between the parties thereto, and said contract was construed by said parties to mean that the marketable title to be shown by the said Grace L. Stone, mother and natural guardian of Ethel Marker, Clarence Marker, William Marker, Mary Marker and Julia Marker, minor heirs of the said Reese Marker, should be secured by an application to the probate court having jurisdiction of said minors for the appointment of a guardian and for the sale and conveyance of the interest of said

minors in and to said real estate in addition to the conveyance to be made by the said Grace L. Stone and John W. Stone, her husband.

"That said contract was construed by the parties to mean that said probate court proceedings should be had and said guardian's title in pursuance thereof secured and title thus perfected."

Defendant filed a motion to set aside the verdict and to render judgment in his behalf on the pleadings and evidence. Plaintiffs' motion to amend was overruled, and defendant's motion was sustained; likewise defendant's motion to set aside the court's earlier ruling on defendant's demurrer to plaintiffs' evidence was sustained.

Judgment was entered in defendant's behalf, and plaintiffs appeal. At some stage in the proceedings Grace L. Stone died, and her husband as administrator of her estate and as guardian of his minor step-children was substituted in her stead.

The errors assigned against the correctness of the judgment may all be merged into one proposition for our review: Was the written contract for the sale of the farm enforceable as made? In that contract Grace L. Stone and husband represented that they owned the farm. They merely owned nine-fourteenths of it. The deed which they executed simultaneously with the contract warranted that they were seized of an absolute and indefeasible estate of inheritance, in fee simple, of and in, all and singular, the described premises. That warranty was breached as soon as made. This court is well aware that a person who does not own real property and has no title to it may nevertheless give a warranty deed to the property and make that warranty good by doing whatever may be necessary and lawful to acquire the property from whoever may be its owner. But that was not contemplated by the contract under consideration. Under the contract the title which defendant was to get was the one held by Mr. and Mrs. Stone, and the deed conveying that title was already executed and put in escrow, not to await some maneuver whereby the grantors could make good their warranty, but merely to await the reasonable time in which to furnish an abstract showing a marketable title vested in the grantors.

Appellants cite cases where this court has held that it is perfectly proper for an administratrix to make a contract for the sale of real property, although it is necessary for her to get the approval of the probate court before she can fulfill her part of it. (*McAlpine v. Reichenecker*, 56 Kan. 100, 42 Pac. 339.) But here Mrs. Stone did not contract in any official capacity for the sale of the five-four-

teenths interest of the farm belonging to the minors. She represented that she and her husband owned the property. We do not overlook Mrs. Stone's testimony touching the negotiations leading up to the written contract nor the conversations between herself and defendant at the time the contract was executed. Its most significant parts read:

"I think Mr. Smith asked for the deed to be made; said he wanted a good title given to the place and I told him that I would have to go into the probate court.

"Q. You say that Mr. Smith said the deed ought to be drawn; that he wanted a good title? A. Yes, sir.

. . . . . . . . . . . . . . .

". . . Said he understood the circumstances.

"Q. What circumstances? A. The circumstances in which I was placed; that I would have to go into court to give him a good deed.

. . . . . . . . . . . . . . .

"I told him I would go into court and give him a good deed; that I couldn't do it without.

. . . . . . . . . . . . . .

"He said he understood that fully.

. . . . . . . . . . . . . .

"*Cross-examination:*

. . . . . . . . . . . . . .

"Did you state in that conversation that you had seen the probate judge in reference to the minors' interest? A. Yes, sir.

"Q. And that you would be appointed guardian? A. Yes, sir.

. . . . . . . . . . . . . . .

"Q. And you went there for the purpose of being appointed guardian in case it was necessary? A. To do what he advised me to do.

"Q. Did he tell you you would have to be appointed guardian? A. I think so."

Appellee objected to this sort of testimony at the trial on the ground that the contract for whose breach it was sought to mulct him in damages was plain and unambiguous, and needed no oral testimony to explain its meaning. He makes the same point here; but passing the question of its competency, it is quite apparent that the method Mrs. Stone had chosen whereby she could make good her contract and the warranty deed would not have effected the result she sought. It is beside the point to suggest that whenever she might discover that she could not make good her contract and warranty deed by getting herself appointed guardian with authority to sell the property, that such tactics would not vest her with title which would give full validity to the deed she had executed and

placed in escrow, she might resign as guardian and let somebody else be appointed to conduct the sale of the minors' interest, and that she would then be free to buy it. Be that as it may, Mrs. Stone never did take the necessary steps whereby the spirit of her contract could have been complied with—even if we were to hold that the fact that she could not comply with its literal terms could be overlooked. Some of the justices of this court are inclined to hold that the misrepresentation of the extent of her title as set down in the contract was a sufficient justification for defendant to repudiate it. However that may be, the court is agreed that the judgment of the trial court was the only one which could properly be entered under the circumstances, and that judgment is therefore affirmed.