LADEGAARD, Appellant, vs. CONNELL and others, Respondents.

*September 13—October 11, 1938.*

For the appellant there was a brief by *Geo. W. Taylor*, attorney, and *Matt Taylor* of counsel, both of Kenosha, and oral argument by *Matt Taylor*.

For the respondents there was a brief by *Lockney, Lowry & Hunter* of Waukesha, and oral argument by *Henry Lockney* and *Richard N. Hunter*.

FRITZ, J.   In due time the defendants moved to dismiss the appeal herein for the reason that it had never been perfected by plaintiff's filing a *bond* for costs as required by sec. 274.11 (2) and (3), Stats. 1935.   Instead, he had filed a mere *undertaking* in the execution of which he had not joined, but which was all that was required by sec. 274.15, Stats., prior to the enactment of ch. 541, Laws of 1935. That was a general revisor's bill.   Section 284 thereof

amended sub. (2) of sec. 274.11, Stats. 1933, so far as material here, by providing for the service of a bond for costs instead of an undertaking; and section 286 thereof amended and renumbered sec. 274.15, Stats. 1933, by in substance changing the word "undertaking" to the word "bond." That was a material change. Although the differences between them are rather technical, a bond is not the same as an undertaking. The latter need not be signed by the principal, as must be done in the case of a bond. 9 C. J. p. 8, § 2; 65 C. J. p. 1212, § 3. Generally speaking, a bond must be executed under seal (9 C. J. p. 7, § 1; 9 C. J. p. 14, § 19); but that is not essential to the validity of an undertaking. 65 C. J. p. 1213, § 6. However, upon the hearing of the motion to dismiss, the plaintiff tendered and filed a supplemental bond executed by him and acceptable to the defendants. As it is apparent that the appeal was taken in due time and good faith, and that the filing of the undertaking instead of a bond in the first instance was through mistake, the filing of the supplemental bond is hereby permitted under sec. 274.32, Stats. Therefore the motion to dismiss the appeal is denied.

There is no serious conflict in the evidence in relation to the material issues determined by the court's findings. That evidence well warrants and establishes the following facts, as found by the court. The first and principal contract upon which plaintiff relies is dated September 4, 1935. A supplemental contract is dated October 2, 1935. Both purport to have been made between Louis M. Proesel, acting for himself and as agent for the Society of the Divine Word (hereinafter called the "Society"), as purchasers, and Walter C. Barger, acting as agent for Andrew Ladegaard, the vendor; and the contracts are signed by Proesel and Barger accordingly. The principal contract, so far as here material, provided for the purchase of nine hundred eleven acres of land

for $60,000, of which the purchaser paid $6,000 "as earnest money, to be applied on such purchase when consummated," and agreed to pay $54,000 "within five days after the title has been examined and found good, or accepted by him, . . . provided a good and sufficient general deed, conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid), shall then be ready for delivery." The supplemental contract, after recitals as to the execution of the principal contract with Proesel and the Society as parties of the first part therein, the deposit of the $6,000 as earnest money, and the agreement to pay the balance of $56,000 after the title had been accepted and found good, further recited that—

"Whereas, the title of the said property has been so examined and found good and accepted by the party of the first part, and whereas the ten days, thereafter within which the said party of the first part was to pay the said balance of $56,000 has so expired."

Then it was provided in that contract that, therefore, in consideration of extending for fourteen days the time for the payment of the $56,000, the parties of the first part agree that if that sum is not so paid the $6,000 then on deposit with S. D. Connell shall become the property of Ladegaard, and Connell is authorized to pay that sum to him.

The title to the land, which was to be conveyed to the purchasers under those contracts, was vested in Ladegaard for some time prior to and until January 7, 1935. But on that date an order was duly entered by the county court of Waukesha county confirming a foreclosure sale of the land to Mahlon D. Miller, the plaintiff and mortgagee in the foreclosure proceedings, in the due course of which the sale by the sheriff had been ordered and held and the property sold, and the sheriff's deed therefor delivered to Miller as the purchaser. On August 2, 1935, at a hearing on Ladegaard's

motion to vacate the order of February 27, 1935, confirming the sale, the county court stated in an opinion that if Barger and Ladegaard would pay $5,000 to the clerk of the court and would give a bond, approved by the court, agreeing to bid on a subsequent sale, if ordered, a sum that would guarantee to Miller all his principal, interest, costs and disbursements, and attorneys' fees, that a resale would be ordered; and that the attorney for Ladegaard should prepare an order in accordance with the opinion of the court. However, no such order was ever prepared by Ladegaard's attorney or signed by the court; Barger and Ladegaard never paid the $5,000 to the clerk of the court; and they never gave a bond as required by the court's opinion of August 2, 1935, to entitle Ladegaard to have a resale ordered. Although it was provided in the contract of September 4, 1935, that the purchaser agreed to furnish a surety bond "as per the court's orders as of August 2, 1935," there was no provision or agreement at any time by Proesel or the Society to pay or advance the $5,000 which the court in its opinion on August 2, 1935, required Ladegaard and Barger to pay to the clerk of the court in order to become entitled to an order for a resale. Abstracts of title, delivered for examination to D. B. Malone, as attorney for the Society, disclosed that the title was in Mahlon D. Miller, and a written opinion on the title to that effect given by Jacobson & Malone (of which D. B. Malone was a member) on September 30, 1935, was tendered to Barger, as agent for Ladegaard. Malone informed him that title to the land was in Mahlon D. Miller; that there was no certainty of Barger's and Ladegaard's ever securing title thereto to carry out the provisions of the September 4, 1935, contract; and that nothing further would be done by the Society to carry out the contract until Barger and Ladegaard had some certain means of procuring title to the premises. No other abstract of title was ever furnished, and no general deed from Mahlon D. Miller, or anyone else, conveying

good merchantable title was ever presented to the defendants or Jacobson & Malone, as attorneys for the Society. Nevertheless, while matters were in that state Barger induced Proesel to sign the supplemental agreement of October 2, 1935, in which there was the false recital that the title of the property was found good and accepted by the purchasers. However, as the trial court rightly found, the signature of Proesel to that supplemental agreement was obtained under a mistake of fact in that he was misled into signing it by the assurance of Barger that title to the premises had been passed upon by Jacobson & Malone, as attorneys for the Society, and found good, whereas in fact Jacobson & Malone had expressly informed Barger that title to the premises was not acceptable. While matters were still in that state, the plaintiff on December 2, 1935, gave the Society notice that he formally terminated the contract and demanded the $6,000 theretofore deposited with S. D. Connell; and on January 13, 1936, the county court entered an order denying the motion of Barger and Ladegaard for a resale, and again confirming the sale of the mortgaged premises as ordered on January 7, 1935.

The foregoing facts fully warranted the court's further finding that during the existence of the contract the plaintiff was not ready and able to convey to the defendants good title to the premises, and did not have any certain means of obtaining such title. Upon those findings, and additional findings that the Society had not empowered Proesel by any resolution of its directors or officers, or by any signed writing, to enter into either of the contracts as its agent, and that he had no authority to do so, the court concluded that the plaintiff was not entitled to recover from the defendants, and that the defendant Society was entitled to the return of the $6,000 on deposit with Connell. Those conclusions and the judgment entered thereon must be sustained, regardless of whether Proesel was or was not authorized to contract as

the agent of the defendant. At all times between the date of the first contract and plaintiff's termination thereof on December 2, 1935, the title to the property was in Mahlon D. Miller, and the plaintiff never had any certain or absolute means of obtaining title from him. Miller had good title by virtue of the sheriff's deed delivered to him pursuant to the foreclosure sale confirmed on February 27, 1935. No order was ever entered vacating the confirmation of that sale or the sheriff's deed delivered pursuant thereto. Under the county court's opinion of August 2, 1935, the entry of an order vacating that sale was contingent upon the payment of $5,000 by Ladegaard and Barger to the clerk of the court, as well as the filing of a bond "agreeing to bid upon a subsequent sale, if ordered, a sum that will guarantee to the plaintiff all of his principal, interest, costs, disbursements and attorneys' fees which have been adjudged and ordered and such as may hereafter be adjudged and ordered by this court including subsequent attorneys' fees." Ladegaard and Barger failed to comply with either of those requirements. Even though they may have expected the defendant Society to provide the bond in performance of the provision on that subject in the contract of September 4, 1935, that did not relieve Ladegaard from his responsibility or excuse his failure to pay the $5,000 which he was to pay to the clerk in order to entitle him to have the confirmation of the foreclosure sale and the sale to Miller set aside. As neither Proesel nor the Society had agreed to pay those $5,000, and it does not appear that Ladegaard's and Barger's failure to do so was attributable to the defendants, the consequences thereof are chargeable solely to Ladegaard and Barger. But even if the confirmation of the foreclosure sale had been set aside, Ladegaard still would have been unable, prior to his formal termination of the contract on December 2, 1935, to convey good title because, unless and until he had the consent of Miller not to appeal from an order vacating the confirmation

of the sale or his time to appeal had expired, or a contract with Miller to convey the title if the sale remained effective, Ladegaard had no title or certain means of procuring title. Although Ladegaard endeavored to obtain Miller's consent or a conveyance in those respects, it is apparent from the record that they were never able to determine or agree as to the entire amount that Miller was entitled to be paid for his consent or a conveyance. Consequently, the plaintiff was neither ready nor able to convey or procure a conveyance to the Society at any time prior to his termination of the contract on December 2, 1935, and therefore he is not entitled to recover damages for breach thereof by the defendants. Although "one need not be an owner of land in order to make a valid contract of sale thereof" (*Estate of Kaiser*, 217 Wis. 4, 9, 258 N. W. 177), nevertheless, to entitle a vendor to recover damages for breach of the contract by a vendee, the vendor must have the title or the certain or absolute means of procuring title so as to be ready and able to perform by the conveyance of good title to the vendee. As is stated in 66 C. J. p. 1447, § 1524,—

"The vendor, in order to recover for a breach by the purchaser of the contract to purchase, must have been able to convey a good title or such as would comply with the requirements of the contract; but it is not necessary that he should have a good title at the time of the contract, but only that he should be able to convey a good title at the time of performance. . . . Nor is it absolutely essential that the vendor should ever actually have the legal title if he has the certain means of procuring it, or can control it and have it conveyed to the purchaser and offers to do so."

66 C. J. p. 1449, § 1526; *Brown v. Lee* (5th Cir.), 192 Fed. 817; *Beck v. Wilbois*, 194 Iowa, 708, 190 N. W. 376; *Bigler v. Morgan*, 77 N. Y. 312; *Stone v. Smith*, 134 Kan. 565, 7 Pac. (2d) 100. See also *Miswald-Wilde Co. v. Armory Realty Co.* 210 Wis. 53, 243 N. W. 492, 246 N. W. 305.

Under the circumstances Barger's assurance and the recital in the supplemental contract that the title to the property had been passed upon, found good and accepted by the purchaser were obviously false; and as Proesel's signature to that contract was obtained under a mistake of the facts and by being misled by Barger's assurance in that respect, the defendants are entitled to avoid the contract. *Johnson v. Parker,* 34 Wis. 596, 601; *Miller v. Stanich,* 202 Wis. 539, 548, 230 N. W. 47, 233 N. W. 753. It follows that the plaintiff was not entitled to recover thereunder, and the judgment dismissing his complaint and ordering the return of the $6,000 deposited as earnest money to the Society must be affirmed.

*By the Court.*—Respondent's motion to dismiss the appeal is denied. The judgment is affirmed.